IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF NORTH CAROLINA
Case Number: 1:26-cv-132

| | |
|---|---|
| ESP GLOBAL, LLC, a North Carolina limited liability company, | )<br>)<br>)<br>) |
| Plaintiff | )<br>) |
| v. | )<br>) |
| TOWER HEALTH, a Pennsylvania nonprofit corporation, | )<br>)<br>)<br>) |
| Defendant. | ) |

## COMPLAINT

Plaintiff, ESP GLOBAL, LLC, a North Carolina limited liability company ("ESP Global"), by and through its attorneys, WALKER R. LAWRENCE and CAITLIN CHENUS of LEVIN GINSBURG, and SHEA B. MALISZEWSKI of BARRINGER WENTZ MALISZEWSKI, states the following as its Complaint against Defendant TOWER HEALTH, a Pennsylvania nonprofit corporation ("Tower Health"):

## INTRODUCTION

1. This action arises out of Tower Health's failure and refusal to pay ESP Global the $845,450.22 in fees owed to ESP Global for services it performed under the terms of an agreement in which ESP Global identified, procured, and implemented cost-reduction savings on behalf of Tower Health.

2. Under the terms of the agreement between Tower Health and ESP Global, Tower Health was required to pay ESP Global 25% of the average annual savings generated as a result of ESP Global's services.

3. Tower Health has refused to pay the outstanding balance of $845,450.22 in fees owed to ESP Global pursuant to the agreement.

4. ESP Global seeks relief from Tower Health for breach of the agreement.

## PARTIES, JURISDICTION, AND VENUE

5. ESP Global is a limited liability company organized under the laws of the state of North Carolina, with its principal place of business in the city of Southern Pines, Moore County, North Carolina.

6. Tower Health is a nonprofit corporation organized under the laws of the state of Pennsylvania, with its principal place of business in West Reading, Pennsylvania.

7. The Court has subject-matter jurisdiction pursuant to 28 U.S.C. § 1332 based on diversity of citizenship and the amount in controversy exceeds $75,000, exclusive of interests and costs.

8. The Court has personal jurisdiction over Tower Health pursuant to Section X of the agreement between the parties, which provides that either party may seek to have any claim or controversy resolved "in any state or federal court of competent jurisdiction in the state in which the office of the Party initiating the dispute is located."

9. Notwithstanding Section X of the agreement, the Court has personal jurisdiction over Tower Health because Tower Health has conducted substantial business

in North Carolina, including but not limited to entering into an agreement with ESP Global, a North Carolina company, directing communications within North Carolina subject to that agreement for several years, and remitting partial payment to ESP Global here in North Carolina. Tower Health has purposefully availed itself to the jurisdiction of North Carolina and this Court.

10. Venue is appropriate in this Court pursuant to Section X of the agreement between the parties.

**ALLEGATIONS**

11. On or about November 2, 2021, ESP Global and AllSpire Health GPO, LLC ("AllSpire") entered into a Letter of Agreement. AllSpire executed the Agreement in its capacity as agent on behalf of several hospital systems, including Defendant Tower Health.

12. On or about November 2, 2021, Tower Health and ESP Global executed a corresponding Joinder Agreement, binding Tower Health to the terms of the Letter of Agreement between ESP Global and AllSpire. (The Letter of Agreement and Joinder Agreement are hereafter referred to collectively as the "Agreement"). A true and correct copy of the Agreement is attached hereto as **Exhibit "A"**.

13. Under the terms of the Agreement, ESP Global was to provide certain services to Tower Health, divided into two phases. In Phase One, ESP Global was to provide an equipment maintenance assessment and identify specific items of Tower Health's inventory that could potentially qualify for cost reduction opportunities and identify the appropriate strategy to obtain those savings. *See* Ex. A. In Phase Two, ESP

Global was to procure and implement cost-reduction savings on behalf of Tower Health. *Id.*

14. Pursuant to the Agreement, ESP Global completed the Phase One assessment and identification of inventory that could qualify for potential cost-reduction savings for Tower Health.

15. In Phase Two, ESP Global performed its RFP (request for proposal) process, engaging in a structured, multi-step method for soliciting proposals from vendors to implement cost-reduction savings for Tower Health.

16. Following the RFP process, Tower Health engaged SPBS, Inc., ("SPBS") to implement cost-reduction services on its behalf. This engagement was memorialized in a Letter of Intent entered into between Tower Health and SPBS ("Letter of Intent"). A true and correct copy of the Letter of Intent is attached hereto as **Exhibit "B"**.

17. Prior to signing the Agreement with ESP Global, Tower Health's annual spend was approximately $22,000,000 according to Tower Health.

18. Following ESP Global's services pursuant to the Agreement, Tower Health's spend was reduced to approximately $17,000,000.

19. Tower Health and SPBS ultimately terminated their relationship, and Tower Health reached out to ESP Global to procure a replacement vendor.

20. ESP Global worked tirelessly to find and engage a new vendor for Tower Health.

21. Ultimately through ESP Global's efforts a new vendor, Intelas, was engaged by Tower Health to perform substantially similar services as SPBS.

22. Intelas services resulted in Tower Health's saving even more than it would have under SPBS.

23. To date, Tower Health continues to realize significant savings from ESP Global's services under the Agreement.

24. Pursuant to the Agreement, Tower Health is required to pay ESP Global 25% of the average annual savings generated as a result of ESP Global's services. *See* Ex. A.

25. ESP Global initially identified an average annual savings of $2,761,238 for Tower Health, resulting in a 25% fee of $690,310, payable in 24 monthly installments of $28,763.

26. To date, Tower Health has only paid ESP Global $404,549.78.

27. On or about September 2, 2025, ESP Global received a letter from Tower Health, demanding that ESP Global return the fees Tower Health had paid to date (the "September 2, 2025 Letter"). A true and correct copy of the September 2, 2025 Letter is attached hereto as **Exhibit "C"**.

28. Following receipt of the September 2, 2025 Letter, ESP Global conducted an audit and determined that the average annual savings realized by Tower Health was $5,000,000 – substantially higher than the $2,761,238 originally identified. Based on this increased savings, ESP Global's 25% fee is approximately $1,250,000.

29. Tower Health owes ESP Global a total of $845,450.22, representing ESP Global's 25% fee of $1,250,000, minus the $404,549.78 previously paid to ESP Global.

30. In a letter dated October 1, 2025, ESP Global notified Tower Health of the outstanding amount owed and demanded payment from Tower Health. A true and correct copy of the October 1, 2025 Letter is attached hereto as **Exhibit "D"**.

31. In a letter dated October 20, 2025, Tower Health acknowledged ESP Global's October 1, 2025 letter, but again demanded that ESP Global return the $404,549.78 it has been paid to date. A true and correct copy of the October 20, 2025 Letter is attached hereto as **Exhibit "E"**.

## COUNT I
**(Breach of Contract)**

32. ESP Global realleges and incorporates by reference the allegations contained in Paragraphs 1 through 29 as if fully set forth herein.

33. The Agreement is a valid and enforceable contract between ESP Global and Tower Health.

34. ESP Global performed all conditions required of it pursuant to the Agreement and has satisfied all conditions precedent in the Agreement prior to filing the lawsuit.

35. Tower Health breached the Agreement by refusing to pay ESP Global the remainder of its fee for services ESP Global performed pursuant to the Agreement.

36. As a direct and proximate result of Tower Health's breach, ESP Global has been damaged in the amount of $845,450.22.

37. ESP Global has incurred attorneys' fees and costs associated with demanding payment from Tower Health and preparing and filing the instant action. Section X of the Agreement provides that, in the event of litigation involving the Agreement, the prevailing party is entitled to recover its court costs and reasonable attorneys' fees incurred in enforcing the terms of the Agreement. *See* Ex. A.

38. Section XIV(c) of the Agreement provides that ESP Global is entitled to a charge of 1.5% per month on the balance of any invoices not paid within 30 days. *See* Ex. A.

WHEREFORE, ESP Global respectfully requests that the Court enter an award in its favor and against Tower Health as follows:

A. Awarding damages in the principal amount of $845,450.22;

B. Awarding ESP Global all applicable interest, attorneys' fees and costs; and

C. Awarding such further relief that the Court deems just and proper.

Respectfully Submitted,

ESP GLOBAL, LLC,
Plaintiff

By: /s/ Shea B. Maliszewski
Barringer Wentz Maliszewski, LLP
Local Counsel for Plaintiff
NC State Bar No.: 44587
PO Box 5566, Cary, NC 27511
P: (919) 467-6700
F: (919) 481-9190
E: shea@bwm.law

and

*Subject to LR 83.1(d)*
By: Walker R. Lawrence
By:   /s/ Caitlin Chenus
Levin Ginsburg
Attorneys for Plaintiff
180 N. LaSalle Street, Suite 2750
Chicago, IL 60601
(312) 368-0100
wlawrence@levinginsburg.com
cchenus@levinginsburg.com